# Watson *versus* Davidson *et al.*

1. When the owner of a timber tract, in person or by others under him, enters thereon to take out the timber, carries on the business for so long a time and in such manner continuously, from year to year, as to show an actual and permanent occupancy of the tract, with the use thereof, and personal property thereon from year to year, and so that the appearance of the land itself indicates to the assessor that there is an occupation of the same by the claimant for the purpose or business of lumbering, it is seated, and it is the duty of the assessor to so assess it.

2. The number, permanency, use and character of the buildings, the property found on the land, and the death of the owner accounting for a short non-user, were facts properly for the jury, in determining the question of an actual, continued and fixed possession.

June 5th 1878.   Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD JJ.

Error to the Court of Common Pleas of *Warren county:* Of May Term 1878, No. 89.

Ejectment by Lewis F. Watson against Samuel Davidson and others, for a tract of land in Warren county.

The plaintiff claimed title by virtue of a patent from the Commonwealth to George Mead, dated June 13th 1798; the assessment of the land as unseated for the taxes of 1870; their sale for the taxes of 1870, and the deed of the treasurer to plaintiff, dated June 10th 1872.

The defendants claimed title under one Joseph Green, who died in the fall of 1868. The land had always been assessed on the unseated list, was so assessed in the name of Green, and the taxes paid by him from the year 1856 to his death. After his death it was assessed to his estate as unseated, and the taxes paid by his administrators down to the year for the taxes of which it was sold to the plaintiff.

It appeared from the evidence that about 1857, Green commenced cutting and removing timber from the tract, drawing it to

[Watson *v.* Davidson.]

the river and running it to market.  The timber was cut and run to the river by jobbers who, during the whole of the year, except when engaged in running the lumber to market, occupied buildings or shanties on the tract, the materials for the erection of which were furnished by Green.  These lumbering operations of Green continued until his death, from which time until December 1869, when the assessment of taxes for 1870 was made the land was unoccupied.

On behalf of the plaintiff, it was contended that there was nothing in the appearance of the land that would indicate any occupation by a claimant, against whom it was the duty of the assessor to assess the taxes of 1870 as a personal charge, while the defendants claimed that the land was seated by the continuous occupancy for lumbering purposes disclosed by the evidence; and because there was upon the land, the result of that occupancy, sufficient personal property at all times to pay the taxes assessed thereon.

In the general charge the court, Trunkey, P. J., inter alia, said:

" The land in controversy was sold at a treasurer's sale for taxes and purchased by the plaintiff.  The assessment and treasurer's deed on their face vest title in the plaintiff and entitle him to recover.  To defeat the title the defendants allege the land was seated at and before the time of the assessment.  If this be true the assessment and deed are void, and the defendant's title is as clear as if no tax sale had been made.  The sole question for you to answer is, was the land seated at the time of the assessment? If so the assessor had no right to place it upon the unseated list; the consent of the owners could not give such right.  If it had been placed on the unseated list for many years before, whether seated or unseated, that would be no excuse for continuing to place it there.  Such prior assessments may be considered with other evidence bearing on the question at issue.  But if the land was seated the assessment was a nullity, and no title can rest upon it.

" The defendants ask you to find that the land was a seated tract. The plaintiff claims that the evidence warrants no such finding, and contends it shows no residence, cultivation or improvement by clearing land; that instead of dwelling-houses and barns, only temporary shanties and stables were erected by jobbers, for use while stocking in logs in the winter season, and abandoned when their jobs were completed, and that there was nothing upon the land to indicate to the assessor that there was an actual occupation thereof. * * * [Actual residence upon a tract of land is not necessary to make it seated.  Nor is cultivation, if by it is to be understood raising crops.  Nor is improvement, if by that is meant making the land more valuable.  But to seat the land it must be used and occupied, and have thereon the evidences of occupation.] To enter upon a tract of land with engine and machinery and sink an oil well, produce oil as a business thereon, store in tanks and

[Watson *v*. Davidson.]

remove the oil, would make the land seated, though no one resided on it, and not a foot were cultivated for crops. To erect a saw-mill of a permanent character on a tract of timber land, and make a business of manufacturing the timber into lumber for market would seat the tract, though not a residence or shanty were built on it. To open out a mine of ore or coal and carry on the business of mining and disposing of the mineral or coal, on a tract of land, would be good evidence that it is seated. Without giving other instances, you see occupations for various purposes may render a tract seated, and residence or cultivation are not always necessary. [Whatever the use and occupation it is essential that it be visible, and such as could be and ought to be seen and known by the assessor. A tract of woodland on which the assessor can see no use and occupancy is not seated. Cutting a few trees, squaring them and leaving them in the woods, would not make a tract seated, nor would giving out a job for a single winter or lumbering season, the jobber building a shanty and abandoning it when the lumbering was done before the assessment. Occasional cutting and taking away timber from a tract would not be enough to require the assessor to place it on the seated list. When the owner of a timber tract, in person or by others under him, enters thereon to take out the timber, carries on the business for so long a time and in such a manner continuously from year to year as to show an actual and permanent occupancy of the tract, with use thereof, and personal property thereon from year to year, and so that the appearance of the land itself indicates to the assessor that there is an occupation of the same by the claimant for the purpose or business of lumbering, it is seated, and it is the duty of the assessor to so assess it.] When one enters on a tract to reside and builds a house or clears and cultivates land, the real occupancy is manifest at once, and immediately thereafter the assessor is bound to notice such occupancy. In some other kinds of occupancy the same may not be so soon manifest, may not be so readily seen by the assessor, but whenever it has assumed such character as to be visible and known to every one whose business it is to see and know it, then the assessor is required to assess it as seated.

"[Was the land seated prior to the year 1869? If so, the plaintiff contends that it was abandoned before the assessment in December of that year. If not seated prior, of course there need be no inquiry as to abandonment. But if it was seated, did the evidences thereof sufficiently remain as to be visible and known to the assessor? What were the evidences on the grounds of occupancy at the time of the assessment? Were they of such character as to arrest attention and show to the assessor that the tract had been occupied and seated? If so, before assessing it as unseated it must have appeared abandoned. A mere temporary suspension of business, occasioned by the death of the owner, would not be enough.

[Watson v. Davidson.]

But if the appearance of the tract was such as to show clearly an abandonment of occupancy and cessation of the business, it could be assessed as unseated.]

" Coming back to the sole question first presented, if you answer by finding the land was seated at the time of the assessment, the verdict will be for the defendants; but if unseated, for the plaintiffs."

Verdict and judgment for defendants, when plaintiff took this writ, assigning for error, inter alia, the portions of the foregoing charge noted in brackets.

*William D. Brown*, for plaintiff in error.—The residence, improvement or occupation of any description which will seat a tract of land must be characterized by some degree of permanency and continuance: Wallace v. Scott, 7 W. & S. 248; Kennedy v. Daily, 6 Watts 269; Biddle v. Noble, 18 P. F. Smith 279; Lackawanna Iron Co. v. Fales, 5 Id. 90; George v. Messinger, 23 Id. 418. This case was destitute of all those features heretofore esteemed essential to seat land. The residence of each jobber, if indeed it can with any propriety be called a residence, was for so short a time and each one for such a transient purpose, that the intention of Joseph Green to seat or not to seat the land might have been as is said in George v. Messenger, a controlling element in the case. Whether facts essential to seat land are or are not established by the evidence, is for the jury. Whether given facts do or do not seat land, is for the court.

If the taking timber from a tract of land has efficacy to seat it, may it not with propriety be claimed that the cessation of timbering for eighteen months, whether from the death of the owner or otherwise, justifies an assessment as unseated. The land presented no evidence of an intention ever to resume operations thereon.

*R. Brown* and *John P. Vincent*, for defendants in error.—There was upon the land during the years 1869, 1870 and 1871, personal property sufficient to pay all the taxes assessed against it, and the taxes could have been collected by distress, and this seated the tract: Milliken v. Benedict, 8 Barr 176; Campbell v. Wilson, 1 Watts 503; Ellis v. Hall, 7 Harris 296. This land was used by its owner for the purpose of lumbering, continuously for many years, and the testimony shows that he intended to continue that use, and this is one of the very kinds of use and possession that seat a tract: Lackawanna Coal Co. v. Fales, 5 P. F. Smith 90. This was as permanent an occupancy as the nature of the use required.

Chief Justice AGNEW delivered the opinion of the court, June 10th 1878.

This case was very fairly submitted to the jury on the only fact

6 NORRIS—18

[Watson *v.* Davidson.]

upon which the verdict turned, viz., the seated character of the tract, and of this there was sufficient evidence to go to them.    In the legal aspect of the case, the question was whether a tract of land can be seated for *lumbering* purposes.    The negative means that land cannot be seated except for agricultural purposes.    It would have been error to so hold.    The court said: "When the owner of a timber tract, in person or by others under him, enters thereon to take out the timber, carries on the business for so long a time and in such manner continuously, from year to year, as to show an actual and permanent occupancy of the tract, with the use thereof, and personal property thereon from year to year, and so that the appearance of the land itself indicates to the assessor that there is an occupation of the same by the claimant for the purpose or business of lumbering, it is seated, and it is the duty of the assessor to so assess it."

Clearly the character of the land as thus described, was a question of fact for the jury, and if so found, the land is seated, for we cannot perceive that such an actual continued occupancy has less effect than if the owner were in actual possession carrying on any other business.    It is not the business which gives character, but the permanent occupancy and possession with the means afforded thereon for the collection of the taxes.

In this case the number, permanency, use and character of the buildings, the property found on the land, and the death of the owner, accounting for a short non-user, were facts properly for the jury, and not the court, in determining the question of an actual continued and fixed possession.    While the jury might have found a different verdict, the evidence was not so weak as to be withdrawn, with a peremptory instruction to find a verdict for the plaintiff.

Judgment affirmed.